Tina Aguilar v. Kilolo Kijakazi All rise United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Thank you. Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the circuit court judges and my chambers are in Anchorage, Alaska but I'm delighted to be sitting in Portland this week with my colleague Judge Sung and we both want to thank and welcome Judge Reyes who's here to help us out on our calendar. We appreciate your help very much. Thank you. Just a little bit of housekeeping. We have two cases submitted on the briefs today. The first is 20-72955 and the second is 21-35238. Those cases will be decided without oral argument. The first case on the calendar is 21-35383 Aguilar. And both of these fellows are by Zoom. Could I start please by just getting counsel to give me a thumbs up to make sure you can hear us okay and do a sound Okay. We're ready for your argument. Thank you. May it please the court. My name is Eitan Yonich and I am representing Janine Aguilar in this appeal. Aguilar has been unable to work since August of 2016 due to her physical and mental impairments which include lumbar and cervical degenerative disease, osteoarthritis, shoulder strains, anxiety, and depression. I know the court has asked me to focus on the reaching issue. But before I do, I'm just going to briefly just mention that I have mostly in my briefing focused on the fact that Aguilar's treating physician, Dr. O'Farrell, opined that she could not work. And an examining nurse practitioner, Ms. Ironson, wrote a somewhat slightly confusing opinion in which she opined that she was limited to sedentary work and she should only try to find light duty work. And so if you accept the sedentary work limitation, she qualifies under the medical vocational guidelines. And light duty work, you know, my position is that, our position is that light duty work is not light exertional level work. It is light duty, which would include sedentary. But I think the sedentary, the clear statement on sedentary exertion should control the outcome of this case. But now turning to what the court has wanted me, asked me to discuss. There is an issue where the state agency physicians opined that Aguilar was limited to only occasional overhead and lateral reaching bilaterally. Now, it doesn't make a difference that the ALJ stated that he was giving significant weight to their opinions, but then didn't include the lateral reaching limitation in his residual functional capacity assessment. And he also didn't include it in the hypotheticals that were posed to the vocational expert. Now, if you accept that Ms. Anderson's opinion that she was limited to sedentary work, if you accept that opinion, the case is controlled by the medical vocational guidelines. So the reaching thing doesn't matter. But if you don't accept that, or if you determine that, well, that wasn't clear enough, the limitation on bilateral reaching would prevent her from doing many jobs. And we don't know how many because the question was imposed. I think there was an assumption here that the sedentary limitation would control the outcome of the case. Is there a difference between overhead reaching and lateral reaching and in the way that that would limit somebody's ability to work? Obviously, there is. We don't have vocational testimony on that issue, but it's obviously a difference. And the limitation on lateral reaching makes total sense because there is objective evidence through imaging studies and also examinations from Dr. O'Farrell, which show that when she attempted to reach, she experienced pain so serious, she had to quit her last job. And when she tried getting trained to a different job, she couldn't do the job because trying to do the reaching part prevented her from doing it. So I'm not sure how else to describe it. Is there a difference between those two? I think it's an obvious difference. And while we don't have a definitive testimony from a vocational expert on how that difference would impact the ability to do light work, it seems apparent that it would. And if she's limited to sedentary work, it becomes moot. Unless the court has other questions for me, I would like to reserve my time for rebuttal. It looks like we don't have any at this point. We'll hear from opposing counsel, please. Thank you, Your Honors. Good morning, Your Honors. Good morning, Mr. Yonich. Joseph Linekhammer on behalf of the Commissioner. I do want to start with the question that this is, did the ALJ commit reversible error when omitting a lateral reaching limitation from Ms. Aguilar's RFC or corresponding hypothetical question to the VE? The answer is no for two reasons. First, the evidence on which Aguilar relies, the state agency doctor's opinion, does not clearly support a lateral reaching limitation. Let me interrupt you. I apologize, Mr. Linekhammer, but don't both Drs. St. Louis and Platter assign significant weight to Aguilar's limitation to occasional lateral reaching? The ALJ did give significant weight to those doctors' opinions, so it's important for us to see what those doctors actually said. Didn't they say that the limitation of lateral reaching was a primary driver for the applicant's inability to perform past work? If we look at the limitation, because it's important to look at the language they used, on page 63, and this also appears in the other doctor's report, here's the limitation. Limit OH slash lateral reach bilaterally. When we look at that specific limitation, Judge Reyes, it could mean a number of things. It's not entirely clear that these doctors are limiting her to all reaching to her side. What the ALJ interpreted that to mean was overhead reaching, and that could mean side overhead reaching, so overhead reaching on your side, overhead reaching forward. The ALJ gave her a complete restriction on overhead reaching, even lateral overhead reaching. Counsel, Judge Sung is trying to ask you a question. Thank you. On, I believe, the same page, AR 63, AR 86, it says, rate the individual manipulative limitations reaching any direction, including overhead, limited, left in front and or laterally, right in front and or laterally, left overhead, right overhead. Doesn't that clarify that the limitations are for both lateral and overhead? Well, Judge Sung, it says limited there, and I agree that there isn't a reference there to front and or laterally. There's also the reference to overhead, and then when we look at the further explanation, it says left overhead, right overhead. How do we read it any other way? The left overhead and the right overhead, I think, is where they later say bilaterally, so we're talking about both sides, and when we look at the language they use, which is OH slash lateral, the ALJ reasonably interpreted that to just mean all overhead reaching, so side that limitation that the ALJ ultimately afforded in the RFC, so I agree, Your Honors, that the interpretation that this could mean both overhead and reaching on the side is one reasonable interpretation, but in Ford, the question is, even if the evidence is critical to more than one. Excuse me, forgive me for interrupting, but I want to make sure I'm not missing your point. Where it says limited OH slash lateral, I'm trying to figure out how I get anything other than overhead and lateral out of that, and your answer to the question is what? The answer is, what the ALJ found was that that was a restriction on overhead reaching, so for example, somebody could be reaching overhead, but on the side of their body, so a lateral overhead could be reaching over your head, but on the side of your body, so what the ALJ found was that by restricting her to overhead reaching, that necessarily would encompass overhead reaching on your side, overhead reaching on the front of your body, so again, I think this evidence is susceptible to more than one interpretation, and when that is the case, we have to defer to the ALJ's interpretation, but I do want to get to my second point, which is, even if this court concludes that the ALJ sort of made a mistake in interpreting this opinion, and these doctors really meant that Aguilar was limited in all of her side reaching, not just overhead side reaching, the ALJ still did not commit a reversible error, because the question at the end of the day is, does substantial evidence support the ALJ's RFC finding, which did omit a lateral reaching limitation, and when we're doing that, we need to look at all of the relevant medical and other evidence, that's under 404-1545 and 416-945, so this case does not hinge on these two state agency opinions, recall these doctors did not examine Aguilar, they did not treat her, they issued their opinions without the benefit of reviewing all of the records that the ALJ had, and when we look at the medical records and her activities, we see that Aguilar could in fact reach in various directions, so for example, in early 2017, nurse practitioner Einersen actually characterized Aguilar's reaching limitations as mild, throughout 2017 and early 2018, we're not seeing severe findings about reaching limitations in the medical records, for example, early 2017 in January, she had a normal range of motion in her neck, she fast forward to May of that year, she described just intermittent shoulder pain, and even in those intermittent situations, she claimed that the pain was upper extremities, that's page 469. Let me interrupt you and I apologize, are you suggesting we should ignore the opinions of Drs. St. Louis and Platter? No, your honor, I'm not saying we should ignore them. Was the lateral reaching the primary driver for the applicant's inability to perform past work, according to those two doctors? Your honor, I'm not entirely sure it does say that, I think your honor is referring to page 65, it says RFC limitations preclude past relevant work due to constant reaching limitations, I think you're right, your honor, that they referenced that her past relevant work required constant reaching, but I don't think that this case rises and falls on these two non-examining doctors opinions, because the question is, let's assume the ALJ should have said something about a lateral reaching, let's just assume that that the ALJ's articulation here was not enough, and that it would have been better had the ALJ said something. The question still is, does the record support the ALJ's ultimate RFC finding, which was based on a lot more than just these doctors opinions, and so we have the medical records that show that her neck pain and her shoulder pain were not as severe, but we also have a lot of activities that show that she's able to use her arms in various directions, for example, there's a lot of evidence in this file about her gardening and doing a lot of yard work, in fact, in May of 2017, one of her doctors said, don't try to do all the yard work in one day, that's what causes acute shoulder pain, and her doctor recommended on that day that she actually do arm circles and rotation exercises, this is on page 345 of the record, we see her complaining about these instances of neck and shoulder pain when she's doing all sorts of activities that are showing she's able to move her arms more than these two non-examining doctors are saying, she's able to drive a car, she's able to shop, do light housework, and I understand these are not exactly robust activities, but they are activities that would require a person to reach for things like a steering wheel or a door, so at the end of the day, number one, the ALJ's interpretation was reasonable of these doctors opinions, but even if this court finds that the we still need to take a bigger look at this case and say, well, is the RFC still supported by substantial evidence, and if it is, the corresponding hypothetical to the vocational expert then did include all of the credible limitations that Ms. Aguilar experienced, so I see my time is running out, I know that Mr. Janich today referred to the questions about that, but I'm also very comfortable relying on my briefing, which sets forth the commissioner's position on those points, and if the court has no additional questions, the commissioner requests the court affirm the ALJ's decision. Any additional questions? I have no further questions. Okay, we'll just hear from Mr. Janich in rebuttal, please. I want to first address the activities issue, which was brought up by the opposing counsel, and for one thing, yes, Aguilar used to garden, but the ALJ failed to note that the previous year she hadn't even had a garden because she couldn't do it, and the other activities listed by the ALJ were just abdominimous, for example, him stating that she spent time engaging in social activities, such as road trips, when she actually wrote that she did all of the things she listed in that list one time a year. That's about daily activities. Back to what I consider to be the two main issues here are the opinions of the treating physician and the examining nurse practitioner, both of whom opined that one said she couldn't work, and the other said she was limited to sedentary work, but then I think the court is correct that when an ALJ states that they're giving significant weight to opinions from the state agency physicians, and the state agency physicians quite clearly and over and over again in their assessment forms state that she's limited in her ability to do lateral reaching, bilaterally, and that limitation just plain disappears. At the very least, that's harmful error because we don't know that there are a significant number of jobs that can be performed by someone, even assuming she could do light work, which we believe she cannot. The other thing, the opposing counsel mentioned that she's, as far as how much she can do, her attempts to actually continue to do things in her personal life, and the important thing to bear in mind is that the problem wasn't that she couldn't do anything. The problem is that when she did things, it hurt her to the point where she had to stop, and that's the issue that prevents her from doing light work, but I believe it would also impact her ability to do sedentary work, that inability to continue to use her arms for reaching for a full eight-hour day. So she can do a little, but she can't make it through an eight-hour day on those issues. Unless the court has any other questions, I will ask the court to either affirm and remand for the award benefits, or at a minimum to, I said affirm, I meant reverse, and yes, thank you for catching that, I caught it too, or to reverse and remand the case for a new hearing. Thank you. You bet. Judge Rice, do you have any other questions? I have no further questions. Okay, and I know Judge Sutton does not either, so thank you gentlemen for your argument. We'll take that case under advisement.
judges: CHRISTEN, SUNG, Rayes